PEOPLE *v.* KRAMER.

1. OBSTRUCTING JUSTICE—RESISTING AN OFFICER—QUESTION FOR JURY.

   In a prosecution for resisting and obstructing an officer, whether defendant's companion was intoxicated at the time the officer arrested him, and whether defendant interfered and resisted the arrest, *held*, under conflicting testimony, questions for the jury.

2. ARREST — PERSON INTOXICATED IN PUBLIC PLACE SUBJECT TO ARREST WITHOUT WARRANT.

   An officer is justified in arresting without a warrant a person found intoxicated on a public highway.

3. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION AS TO TESTIMONY GIVEN AT PRELIMINARY EXAMINATION.

   In a criminal case, a witness may not be cross-examined as to his testimony given at the preliminary examination until after the same has been produced and read to him and introduced in evidence.

4. SAME—DISCRETION OF COURT.

   Where the testimony of a witness given at the preliminary examination was lengthy and much of it unrelated to the matter against which cross-examination at the trial is directed, it is within the discretion of the trial court to determine how much of it must be introduced and read before permitting the witness to be cross-examined in regard thereto for the purpose of affecting his credibility.

5. CRIMINAL LAW — TRIAL — ARGUMENTATIVE INSTRUCTIONS NOT PREJUDICIAL WHERE TAKEN IN CONNECTION WITH PRECEDING PORTION OF CHARGE.

   In a prosecution for resisting and obstructing an officer, an instruction which, standing alone, might be objectionable as argumentative, *held*, not prejudicial, when taken in connection with that portion of the charge leading up to it, in which the nature of the offense charged was care-

[1]Obstructing Justice, 29 Cyc. p. 1337; [2]Arrest, 5 C. J. § 31; [3]Witnesses, 40 Cyc. pp. 2732, 2733; [4]Criminal Law, 17 C. J. § 3584; Witnesses, 40 Cyc. p. 2733; [5]Criminal Law, 16 C. J. § 2493; 17 C. J. § 3689.

fully detailed, and the proof necessary to sustain conviction stated.

Exceptions before judgment from Ionia; Hawley (Royal A.), J.    Submitted June 16, 1927.    (Docket No. 96.)    Decided July 29, 1927.

Carl J. Kramer was convicted of resisting an officer. Affirmed.

*Smith, Hunter & Spaulding,* for appellant.

*William W. Potter,* Attorney General, and *Foss O. Eldred,* Prosecuting Attorney, for the people.

STEERE, J.    In November, 1926, defendant was convicted in the circuit court of Ionia county under an information charging him with wilfully assaulting, opposing, obstructing, and resisting Deputy Sheriff Arthur F. Stow of that county while the latter was making an arrest of one Ted Thelen.    The case is here on exceptions before sentence.

It is shown that on the evening of June 28, 1926, in response to a telephone call advising him there was a car in the ditch north of Pewamo, which he had better look after, Stow immediately took a man named Joppe with him and drove to that point where they found an abandoned Ford car in the ditch at the side of the road.    After they had succeeded in getting the car out of the ditch and partially into the road, defendant Kramer drove up in a Ford delivery wagon with Thelen and a man named Parks, and told the officer that car was all right but "just out of gas." None of them got out of their car and Stow walked over towards them.    As he did so he noticed, as he testified, that Thelen was slumped down in his seat beside Kramer, who was driving, in a manner indicating he was intoxicated.    He knew Thelen by sight and name, said as he walked up to the car he wanted to speak to him, observed more carefully his condition

and told him he was in bad shape, needed attention, that he was under arrest, to get out of the car and he would take care of him.     Thelen did not reply or move, and Stow started to help or pull him out. Kramer said he was all right; he would take care of him; Stow could not have him; and started up his car.     As he did so Stow jumped on the running board and reached for the steering wheel, when Kramer repeatedly struck him in the face and tried to throw him off the car.     Stow clung to the steering wheel with one hand as did also Kramer while striking in the face and resisting Stow with the other.     In their struggle the car was turned to the side of the road into and across the ditch and partially through a fence, when it was stopped and Stow took Thelen into custody. He was so seriously intoxicated that Stow had to hold him up and assist him in walking.     He took him to Ionia and turned him over to the sheriff.     Stow's testimony is supported by that of Joppe who was down by the stranded car.     He testified to hearing part of what was said substantially as Stow related, said he saw the car start up with Stow on the running board, and after it went through the fence he heard Kramer curse and swear at Stow.     He only noticed enough as to Thelen's condition to see that the officer had to hold him up and he "looked intoxicated."     A witness named Parmalee, who was postmaster at Matherton and happened to be driving past just at that time, said he saw some trouble with a car in the road, slowed down and then stopped to avoid it.     He heard some oaths and confused talk.     After the car stopped he saw a man getting out of it with Stow's help and the latter took him across the road behind Parmalee's car.     As he did so the man acted as though he was drunk and had to be supported by Stow to get across the road.     Henry J. Cook, sheriff of Ionia county, testified that Stow, who had been his deputy for nearly four years, brought Thelen to the jail in Ionia on the

evening of June 28, 1926, in a drunken condition; that he was "good and drunk," talked irrationally, had to be helped into the jail, was scarcely able to stand alone, and Stow's red and swollen face had disfiguring marks on it.    The deputy at the jail in Ionia, to whom Stow delivered Thelen on the night in question, testified he was "pretty drunk" when brought in.

Defendant's testimony was in substance that he had a farm in the vicinity of Pewamo, but resided in that village, was then engaged in building a house, and knew Thelen, who had worked for him.    On the evening in question he was at his home talking to his hired man and a carpenter who was working for him when Thelen came there claiming that a car he was driving had run out of gas some distance down the road and he wanted help.    Kramer then took some gasoline and drove in his light truck with his hired man and Thelen to the place where the car was supposed to be.    Thelen was not intoxicated but in his usual condition, talked and walked as he always did, with no indication that he was under the influence of liquor. When they drove up to where the car was stranded and stopped, the sheriff came up and said to Thelen: "You are pretty drunk, ain't you?"    To which Kramer replied he was not drunk; said: "I will take care of him; I came down after this car," and started up the car he was driving, when Stow jumped on the running board, grabbed his wheel and twisted the car into the ditch.    He did not strike, resist, or obstruct the officer in any way, except starting his car.

The two questions of whether or not Thelen was intoxicated at the time the officer arrested him, and whether Kramer interfered and resisted the arrest, are clearly made issues of fact for the jury by the conflicting testimony of the two participants and other witnesses called by the respective sides, including the men who saw Thelen at Kramer's house and testified he was then sober.    Thelen testified he was not drunk

when arrested, but admitted he had pleaded guilty and paid a fine of $50 for "driving while intoxicated that night." We discover nothing in the record demanding serious consideration of the ruling of the court in that connection, or defendant's motion for a directed verdict, based on the contention that, even if Thelen were intoxicated, he was guilty of no criminal offense which entitled the officer to arrest him without a warrant. The *locus in quo* was a public highway.

"Voluntary drunkenness in a public place was always a misdemeanor at common law." *People* v. *Townsend,* 214 Mich. 267, 273 (16 A. L. R. 902).

"The captain of police had testified positively that defendant was 'drunk, intoxicated' in his presence. The arrest was therefore justified." *People* v. *McCourtney,* 220 Mich. 550, 552.

"When the officer saw the defendant in a public place while in a state of intoxication he had a right to arrest him without a warrant." *People* v. *Burt,* 224 Mich. 171, 172.

It is urged that prejudicial error was committed by the trial court in not permitting defendant's counsel to fully cross-examine Stow on his testimony given at defendant's examination before the committing magistrate. He first proceeded to cross-examine him without introducing it in evidence or offering to let him read it. Objection was made to his doing so. In sustaining this objection the court said, in part:

"This method of getting at what was testified to upon the examination is not the proper method. * * * The testimony upon that examination is the testimony under the statute which was given by him there and he is entitled to have his testimony read to him and the whole of it before he can be cross-examined from it, or at least have it offered in evidence so the entire testimony can be read. * * *

"*Mr. S*—(defendant's counsel) : That part should be read to him that he is asked about, the testimony had to be read to answer the question.

"*The Court:* He is entitled to have it all read to him, or at least offered in evidence."

Later, in his cross-examination, counsel returned to the subject and said:

"*Q.* Now I will ask you whether on the examination you were not asked this question: 'You claim he talked thickly?' And to that question did you not answer 'Yes, sir.'"

To this the prosecutor objected, stating the court had already ruled upon such examination, but adding: "I have no objection if you want to offer the whole of it." During the discussion which followed, defendant's counsel said:

"I ask the right to ask questions on this for the purpose of testing his credibility. I am claiming that the testimony given by the witness here is different from the testimony given on the same subject in the lower court."

In sustaining the objection, the court said:

"For that purpose or any other the testimony taken on the examination of a witness is the best evidence. That has not been introduced at all yet."

Defendant's counsel then offered to introduce the cross-examination of the witness before the magistrate, but not his examination in chief, to which opposing counsel objected unless the entire examination was offered and read in evidence. This objection was sustained. While much more was said, this gives the substance of the ruling complained of.

While abundant authorities are cited by defendant as to various rulings upon this subject, it is to be noted that most of them are civil cases and involve depositions, letters, testimony on a former trial, etc., not necessarily part of the files as is the examination taken in a criminal case before the committing magistrate, to be made a part of his return holding the accused for trial.

Counsel for defendant especially cite the following four civil cases as settling the rule in Michigan that the witness is not entitled to have all his former testimony read to him or the testimony offered in evidence before he can be cross-examined as to it: *Bronson* v. *Leach,* 74 Mich. 713; *Johnson* v. *Union Carbide Co.,* 181 Mich. 403; *Brown* v. *Mitts,* 187 Mich. 469, and *Gagush* v. *Hoeft,* 208 Mich. 147, especially stressing the *Gagush Case,* and quoting from what was said by this court on a rehearing as to the right of counsel during a trial to interrogate a witness as to his testimony on a former trial either from a transcript of the testimony, notes he had taken, or his personal recollection. That ruling arose from objections made to the statements of counsel during his argument to the jury as to conflicting statements of a witness at the then and a former trial, as to which he had cross-examined the witness. The objection apparently was that it had not been called to the attention of the witness, but on counsel who had cross-examined assuring the court that it was, "and read to her," the court allowed counsel to proceed with his argument. Under such circumstances this court sustained the ruling, saying:

"He may submit to the jury his recollection of the questions asked and answers given, and he should not be prevented from doing so, unless, on objection, the trial judge is convinced that counsel is mistaken in his statement of such testimony."

The *Brown Case* was an action for damages sustained in an automobile accident. The only portion of the opinion touching cross-examination as to former testimony is as follows:

"The seventh assignment of error relates to the claimed testimony in the justice's court; and, while we think the trial judge might well have permitted the question to have been answered, we do not think the ruling constituted prejudicial error, for the reason that the plaintiff, upon his cross-examination, had

not denied, but admitted, that it would have been possible for him to have stopped his car before the collision had he known that there was any necessity for so doing."

It is not shown the testimony taken in the justice's court was in writing.

The *Johnson Case* was an action to recover damages for a personal injury. The *Bronson Case* involved breach of warranty of a cow sold plaintiff, and was commenced in justice's court. After a careful examination of the four cases cited, we find nothing which settles or illuminates the question involved here.

Neither do we discover that this court has ever departed from the rule relating to cross-examination of witnesses as to their preliminary examinations in criminal cases laid down in *Lightfoot* v. *People*, 16 Mich. 507, where the origin and reason of the rule are exhaustively discussed by Justice CAMPBELL. That rule is recognized in other jurisdictions and in our text-books on evidence. It is condensed as follows in Tiffany's Criminal Law (4th How. Ed.), 618:

"But a witness cannot be cross-examined as to his statements made in any written deposition, letter, or other paper, made or signed by him, until after the same has been produced and read to him. The writing is the best evidence of the statements contained in it. Verbal admissions or statements are only receivable of facts provable by parol; and until a paper is read, it cannot be made the basis of a cross-examination at all. If a party desires to cross-examine a witness upon his former statements in a deposition, he should read the entire deposition in evidence before doing so. If he does not desire to cross-examine on that topic, it is sufficient to read it in evidence at any time, for the purpose of contradicting the witness."

It is within the power of the court to compel the entire testimony of the witness taken before a magistrate to be introduced and read before cross-examination as to any part of it, with no doubt discretionary

powers of designation where there is a lengthy examination before the magistrate unrelated to the matter against which cross-examination is directed. What and how much must be read may be a matter within the reasonable discretion of the court. Under the circumstances shown, we cannot find the ruling of the court in this case was an abuse of discretion.

Among defendant's assignments of errors to the court's charge, the following is particularly urged as prejudicial:

"Surely it is a fact that if the respondent knew of these facts I have indicated and what the officer was attempting to do at that time and then resorted to physical violence in order to prevent the officer from doing it, that would be obstructing and opposition and resistance within the meaning of this charge as contained in the information, within the meaning of the statute which defines this offense."

Standing alone, this might appear somewhat argumentative; but leading up to the portion quoted the court first explained the nature of the offense charged in the information, carefully detailed in substance as follows: It must be proved by the people that Stow was an officer at the time and place of the alleged resistance, and defendant then knew Stow was an officer; that at the time of the alleged obstruction and resistance Stow was attempting to arrest Thelen for being intoxicated in a public place, and in unmistakable language made known to defendant that he was attempting to arrest Thelen for being intoxicated; that defendant was aware of that fact at the time of his alleged resistance, and with such knowledge intentionally and wilfully resisted such arrest as charged; that Thelen was at the time of such arrest intoxicated, or Stow at that time had probable cause to believe and did in good faith believe he was intoxicated. Defendant testified that he had known Stow for many years, knew he was an officer at that

time, and disclosed that he was not unfamiliar with legal proceedings involving arrest, admitting that he had himself been arrested for and convicted of violating the law against possession and sale of liquor.

Defendant was fairly tried and skillfully defended by able counsel. No reversible error is found, and the conviction will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.