PEOPLE v OAKS

PEOPLE v MAPLES

Docket Nos. 78-4863, 78-4864. Submitted November 7, 1979, at Lansing.—Decided January 9, 1980.

David R. Oaks and Ronald B. Maples, following a joint trial, were convicted of breaking and entering an occupied dwelling with intent to commit larceny, Washtenaw Circuit Court, William F. Ager, Jr., J. Oaks, Maples and codefendants Larry Maples and Terry Scutchfield were arrested for removing furniture from the residence of Mary Garrett in a van. Bonita Benswinger was Ms. Garrett's babysitter and resided with her. Bonita testified at preliminary examination that she had known the defendants for several months. She had two or three telephone conversations with Larry Maples wherein he said he wanted to come and take everything out of the house and wanted her to leave the house with the doors open. She would then be told when she could return to the house. At trial, Bonita Benswinger asserted her privilege against self-incrimination to avoid testifying. The prosecution offered her preliminary examination testimony. Defendant objected claiming the use of this testimony would deny defendants their constitutional right to confront witnesses against them. The court ruled that the testimony was admissible. Defendants appeal. The cases have been consolidated on appeal. In addition to the claim of constitutional error, defendants allege that Ms. Benswinger's prior testimony contained inadmissible hearsay. *Held:*

1. Prior testimony is admissible where a witness is unavailable or refuses to testify if the transcript of the testimony reveals that the testimony was fairly taken and the witness was cross-examined. Ms. Benswinger asserted her Fifth Amendment privilege and thus refused to testify at defendants' trial. The preliminary examination transcript reveals that she was

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 758.
[2, 3] 29 Am Jur 2d, Evidence §§ 496, 738, 739, 749.
[4] 16 Am Jur 2d, Conspiracy § 46 *et seq.*
[5] 29 Am Jur 2d, Evidence §§ 497, 650.

cross-examined by defendants' attorney. The cross-examination was comprehensive and there was no attempt by the magistrate to hurry or cut short the questioning. The court did not err in permitting the use of Ms. Benswinger's preliminary examination transcript in defendants' trial.

2. Prior testimony regarding an account of a conversation with a defendant is admissible as an exception to the hearsay rule where the witness is unavailable at trial and the testimony resulted from direct, cross, or redirect examination at a preliminary examination of the defendant. Ms. Benswinger's earlier testimony was admissible under this rule and it was immaterial that Larry Maples was available to testify. His statements were not hearsay as they were made by a coconspirator during the course and in furtherance of the conspiracy.

3. Furthermore, even if Larry Maples' statements could be deemed hearsay, they would still be admissible as a declaration of an existing state of mind, whether or not he was available to testify.

Affirmed.

1. WITNESSES — CRIMINAL LAW — AVAILABILITY OF WITNESSES — PRIOR TESTIMONY — RECALCITRANT WITNESS — STATUTES.

A statute authorizes the use of prior testimony whenever the witness giving such testimony cannot be produced at trial; a person is unavailable for purposes of the statute when he refuses to testify (MCL 768.26; MSA 28.1049).

2. WITNESSES — CRIMINAL LAW — PRELIMINARY EXAMINATION — TESTIMONY — CONSTITUTIONAL LAW — FIFTH AMENDMENT — RECALCITRANT WITNESS — CROSS-EXAMINATION — ADMISSIBILITY.

The preliminary examination testimony of a witness, who asserted the Fifth Amendment privilege and thus refused to testify at trial, is admissible where the transcript reveals that the witness was cross-examined by opposing counsel, that the cross-examination took up approximately 14 pages of the transcript and that there was no attempt by the magistrate to hurry or cut short the questioning.

3. WITNESSES — CRIMINAL LAW — PRIOR TESTIMONY — HEARSAY RULES — AVAILABILITY OF WITNESS — CROSS-EXAMINATION — RULES OF EVIDENCE.

Testimony regarding an account of a conversation with the defendant given by a witness at a prior preliminary examination is admissible at a subsequent trial as an exception to the hearsay rule where the witness is unavailable as a witness at

trial and the party against whom the testimony is offered had an opportunity and similar motive at the preliminary examination to develop the testimony by direct, cross, or redirect examination (MRE 804[b][1]).

4. WITNESSES — CRIMINAL LAW — COCONSPIRATORS — PRIOR STATEMENTS — HEARSAY RULE — HEARSAY EXCEPTIONS —RULES OF EVIDENCE.

   Any statement by a coconspirator of a party which was made during the course and in furtherance of the conspiracy is not hearsay and is admissible at a subsequent trial (MRE 801[d][2][E]).

5. WITNESSES — CRIMINAL LAW — DECLARATIONS — STATE OF MIND — HEARSAY RULE — HEARSAY EXCEPTIONS — AVAILABILITY OF DECLARANT — RULES OF EVIDENCE.

   A declaration of an existing state of mind which shows the declarant's intent, plan, motive or design is admissible as an exception to the hearsay rule; under this exception availability of the declarant is irrelevant (MRE 803[3]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Neil J. Juliar,* Assistant Prosecuting Attorney, for the people.

*Raymer & Rekshan, P.C.,* for defendants on appeal.

Before: R. M. MAHER, P.J., and MACKENZIE and J. H. PIERCEY,* JJ.

PER CURIAM. David Russell Oaks and Ronald Boyd Maples were jointly tried before a jury, together with one Terry Scutchfield. They were convicted of the charged offense of breaking and entering an occupied dwelling with intent to commit larceny therein, MCL 750.110; MSA 28.305. Another codefendant, Larry Maples, later pled nolo contendere to the same charge. Defendant Oaks was sentenced to a prison term of 5 to 15

---

* Circuit judge, sitting on the Court of Appeals by assignment.

years. Defendant Ronald Maples was given a 180-day prison sentence and 3 years probation. Both defendants appeal and the appeals have been consolidated due to the identity of the issues raised.

On the afternoon of February 2, 1978, as a result of a telephone call by an informant to the Washtenaw County Sheriff's Department, surveillance was established at the Wood Creek Apartments in Ypsilanti Township. A moving van was observed parked in front of the apartment. The van left the apartments between 7 p.m. and 7:30 p.m. and proceeded to a house at 7107 Platt Road. The van remained parked for 10 or 15 minutes, and the police observed several persons moving furniture from the house into the van. The police followed the van and stopped it on Golfside Road in Ypsilanti. They then arrested David Oaks who was driving, Ronald Maples who was in the passenger seat, and Larry Maples and Terry Scutchfield, who were in the cargo compartment of the van.

Mary Garrett resided at the house in question with her two children and Bonita Benswinger, the babysitter. On February 2, 1978, Ms. Garrett had left the house to go to work. She returned to find the living room furniture, draperies, pictures, and Ms. Benswinger's stereo missing. The furniture in the van was identified as belonging to Ms. Garrett.

At trial, Ms. Benswinger asserted her privilege against self-incrimination to avoid testifying. The prosecution then offered as evidence the testimony given by Ms. Benswinger at the preliminary examination. Defense counsel objected to the admission of this testimony, claiming that the use of the preliminary examination transcript would deny the defendants their constitutional right to confront witnesses against them. The trial court ruled that the testimony was admissible.

At the preliminary examination, Ms. Benswinger testified that she had known the defendant for several months. She had two or three telephone conversations with Larry Maples, wherein he said that he wanted to come and take everything out of the house and wanted her to leave the house with the doors open. She would be told when she could return to the house.

The defendants' first issue on appeal is whether the use of Ms. Benswinger's testimony at the preliminary examination denied the defendants their constitutional right to confront witnesses against them.

MCL 768.26; MSA 28.1049 authorizes the use of prior testimony where a witness cannot be produced at trial. Several cases have stated that a person is "unavailable" for purposes of the statute when he refuses to testify. *People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954), *cert den,* 349 US 937; 75 S Ct 781; 99 L Ed 1266 (1955), *People v Szeles,* 18 Mich App 575; 171 NW2d 550 (1969), *People v Goldman,* 349 Mich 77; 84 NW2d 241 (1957).

In *People v Walter Moore,* 78 Mich App 294; 259 NW2d 351 (1977), the defendant and a codefendant named Houston were charged with felony murder and armed robbery in separate warrants and were bound over in separate preliminary examinations. An accomplice named Rakestraw testified at the defendant's preliminary examination, then refused to testify at trial despite the fact that he had already pled guilty and had been sentenced for his role in the crime. Despite defendant's objections, Rakestraw's testimony at the preliminary examination was admitted, even though codefendant Houston and his attorney had not been present at that examination and never had an opportunity to

cross-examine the witness. The Court upheld the use of Rakestraw's preliminary examination transcript, saying that there had been a fully adequate opportunity for cross-examination. The defendant's cross-examination took up 12 pages of transcript, and the examining magistrate made no attempt to hurry or cut short the questioning. This was held sufficient to satisfy the requirements of the Sixth Amendment confrontation clause.

In *People v Castaneda,* 81 Mich App 453; 265 NW2d 367 (1978), an informant named Velasquez testified at that defendant's preliminary examination concerning an alleged sale of heroin. Velasquez subsequently repudiated his preliminary examination testimony. At the trial, Velasquez claimed his Fifth Amendment privilege because of pending perjury charges against him arising out of the repudiation of his testimony. The Court upheld the trial judge's ruling admitting the use of the preliminary examination transcript under MCL 768.26; MSA 28.1049, saying that defendant took advantage of the opportunity to examine Velasquez at the hearing. The Court added that the prosecutor was not required to grant Velasquez immunity under MCL 780.701; MSA 28.1287(101), citing *People v Towlen,* 66 Mich App 577, 579-580; 239 NW2d 668 (1976).

In the case at bar, Ms. Benswinger asserted her Fifth Amendment privilege and refused to testify at trial. The preliminary examination transcript reveals that she was cross-examined by the attorney for defendants Ronald Maples and Oaks and then by the attorney for Scutchfield. The cross-examination took up approximately 14 pages of transcript and there was no attempt by the magistrate to hurry or cut short the questioning. The prosecutor was not required to offer the witness immunity in exchange for her testimony. We

therefore find no error in the use of Ms. Benswinger's preliminary examination transcript.

The defendants' second allegation on appeal is that Ms. Benswinger's preliminary examination testimony was erroneously admitted because it contained inadmissible hearsay, consisting of an account of a conversation between the witness and Larry Maples. Defendants contend that this hearsay does not fall under any exception to the hearsay rule, since Larry Maples was present and available to testify at the trial, as he had never asserted his privilege against self-incrimination.

This contention is without merit. The declarant of the hearsay was Bonnie Benswinger, who became unavailable by asserting her Fifth Amendment privilege. Her preliminary examination testimony was admissible under MRE 804(b)(1). It was immaterial that Larry Maples, the participant to this telephone conversation, was available at trial. His statements were not hearsay under MRE 801(d)(2)(E), which excepts from the hearsay definition any statement by a coconspirator of the party which was made during the course and in furtherance of the conspiracy. See generally, *People v Stewart,* 397 Mich 1; 242 NW2d 760 (1976), *modified on other grounds,* 400 Mich 540; 256 NW2d 31 (1977). The telephone conversations between Larry Maples and Ms. Benswinger were designed to facilitate the removal of Ms. Garrett's furniture, and were therefore in furtherance of the conspiracy. In any case, even if we deem Larry Maples' statements to be hearsay, they would be admissible under MRE 803(3) to show the declarant's intent, plan, motive, or design. The availability of the declarant is immaterial for the purpose of MRE 803. See *People v Paintman,* 92 Mich App 412; 285 NW2d 206 (1979).

Affirmed.